# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) Judge Charles M. Walker |
| **AMARILLO PLATINUM, LLC;** | ) |
| **MIDLAND PLATINUM, LLC;** | ) Case No. 3:24-bk-02447 |
| **MIDLAND PLATINUM II, LLC** | ) Case No. 3:24-bk-02448 |
| | ) Case No. 3:24-bk-02449 |
| Debtors. | ) |
| | ) JOINT ADMIN REQUESTED |

---

**THE DEADLINE FOR FILING A TIMELY RESPONSE IS: July 26, 2024**
**IF A RESPONSE IS TIMELY FILED, THE HEARING WILL BE: August 7, 2024 at**
**11:00 a.m. in Courtroom 2, 701 Broadway, Nashville, TN 37203**
**(Virtual Hearing if allowed; See website for details)**

---

## NOTICE OF APPLICATION FOR ORDER APPROVING EMPLOYMENT AND RETENTION OF NATIONAL HOSPITALITY CONSULTING GROUP AS RESTRUCTURING AND GENERAL BUSINESS ADVISORS FOR THE DEBTORS

The above-styled Debtors (the "Debtors") have asked the Court to enter an order approving the employment and retention of National Hospitality Consulting Group as Restructuring and General Business Advisors for the Debtors.

**YOUR RIGHTS MAY BE AFFECTED.** If you do not want the Court to grant the attached motion, or if you want the Court to consider your views on the motion, then on or before the date set forth above, you or your attorney must:

1.  File with the Court your response or objection explaining your position. **PLEASE NOTE: THE BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE REQUIRES ELECTRONIC FILING. ANY RESPONSE OR OBJECTION YOU WISH TO FILE MUST BE SUBMITTED ELECTRONICALLY. TO FILE ELECTRONICALLY, YOU OR YOUR ATTORNEY MUST GO TO THE COURT WEBSITE AND FOLLOW THE INSTRUCTIONS AT: <https://ecf.tnmb.uscourts.gov>.**

    If you need assistance with Electronic Filing you may call the Bankruptcy Court at (615) 736-5584. You may also visit the Bankruptcy Court in person at: US Bankruptcy Court, 701 Broadway, 1st Floor, Nashville, TN (Monday - Friday, 8:00 A.M. - 4:00 P.M.).

2.  **Your response must state the deadline and hearing date set forth above, and the motion to which you are responding.**

3.      You must serve your response or objection **by electronic service through the Electronic Filing system** described above.

If a response is filed before the deadline stated above, the hearing will be held at the time and place indicated above. ***THERE WILL BE NO FURTHER NOTICE OF THE HEARING DATE***. You may check whether a timely response has been filed by calling the Clerk's office at (615) 736-5584 or viewing the case on the Court's website at <u><www.tnmb.uscourts.gov></u>.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief.

Dated: July 5, 2024               Respectfully Submitted,

<u>/s/ Henry E. ("Ned") Hildebrand, IV</u>
Henry E. ("Ned") Hildebrand, IV
Gray Waldron
DUNHAM HILDEBRAND PAYNE WALDRON, PLLC
9020 Overlook Boulevard, Suite 316
Brentwood, Tennessee 37027
615.933.5851
ned@dhnashville.com
gray@dhnashville.com
*Counsel for the Debtors*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) Judge Charles M. Walker |
| **AMARILLO PLATINUM, LLC;** | ) |
| **MIDLAND PLATINUM, LLC;** | ) Case No. 3:24-bk-02447 |
| **MIDLAND PLATINUM II, LLC;** | ) Case No. 3:24-bk-02448 |
| | ) Case No. 3:24-bk-02449 |
| Debtors. | ) |
| | ) JOINT ADMIN REQUESTED |

## APPLICATION FOR ORDER APPROVING EMPLOYMENT AND RETENTION OF NATIONAL HOSPITALITY CONSULTING GROUP AS RESTRUCTURING AND GENERAL BUSINESS ADVISORS FOR THE DEBTORS

Pursuant to 11 U.S.C. §§ 327 and 328 and Federal Rules of Bankruptcy Procedure 2014 and 6006, the above-captioned debtors (the "Debtors") respectfully request that the Court approve the employment and retention of National Hospitality Consulting Group ("NHCG"), effective as of the Petition Date, as the Debtors' restructuring and general business advisors. In support of its Motion, the Debtors state as follows:

### I. JURISDICTION

1.  This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.  The Court possesses the requisite authority to grant the relief requested herein pursuant to Title 11 of the United States Code (the "Bankruptcy Code"), in particular, Sections 327 and 328, and Rules 2014 and 6006 of the Federal Rules of Bankruptcy Procedure.

### II. BACKGROUND

3.  On July 2, 2024, (the "Petition Date"), the Debtors commenced these cases by each individually filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

4.      The Debtors have filed a *Consolidated Company Profile* (the "Company Profile") in each of their cases and incorporate that document herein by reference.

5.      Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their property as debtors-in-possession.

6.      No trustee or examiner has been appointed in these cases, and no official committee of creditors or equity interest holders has been established.

## III.  RELIEF REQUESTED AND BASIS THEREFOR

7.      By this Motion, the Debtors seek permission to engage NHCG to provide management, restructuring, business, and financial advisory services to the Debtors pursuant to the terms of that certain *Contract Agreement of Engagement of National Hospitality Consulting Group* (the "Agreement"), a copy of which is attached hereto as Exhibit 1.

8.      NHCG and its Owner and Director of Operations, Manoj Patel ("Mr. Patel"), have substantial turnaround experience in the hotel and hospitality space. A copy of Mr. Patel's curriculum vitae setting forth his experience, employment history, achievements in the hotel and hospitality space, academic and professional credentials, certifications, and extensive expert testimony experience in bankruptcy courts across the country is submitted herewith, along with information setting forth NHCG's service offerings. NHCG and Mr. Patel will utilize this experience and expertise to maximize the value of the Debtors' estates and further maximize the likelihood of obtaining confirmable plans of reorganization for each Debtor.

9.      Significantly, this Court already approved the retention of NHCG and Mr. Patel in an identical capacity in jointly administered cases currently pending before this Court, at Case No. 3:23-bk-03592 (*In re Lebanon Platinum, LLC et al.*) (the "Affiliate Cases"), where NHCG has played an essential role in assisting the debtors in the Affiliate Cases (the "Affiliate Debtors") throughout the bankruptcy process.

2

10.      Subject to this Court's approval, NHCG shall charge for its services on an hourly basis in accordance with its ordinary and customary hourly rates in effect on the date of services rendered and as set forth in the Agreement. These hourly rates are as follows: Director of Operations ($475 per hour), Senior Financial Consultant ($350 per hour), Senior Consultant ($300 per hour), Senior Design Consultant ($280 per hour), Senior Associate ($240 per hour), Administrative Professional ($115 per hour), and Travel Time ($110 per hour). NHCG's hourly rates are subject to periodic adjustments, but it shall not make any such adjustments absent approval of the Court.

11.      In addition to seeking payment for legal services, NHCG will charge for all expenses actually incurred on behalf of the Debtors, consistent with its normal practices as set forth in Section 4 of the Agreement and as may be approved by the Court as reasonable and necessary.

12.      The Debtors seek to retain NHCG as their restructuring and business advisors—and Mr. Patel as their Chief Restructuring Officer—because the Debtors value the experience and knowledge of Mr. Patel and the other members of NHCG. NHCG has experience in Chapter 11 cases generally as set forth in Mr. Patel's Verified Statement, and it understands the complexities that surround a restructuring.  NHCG is further knowledgeable and experienced in creating monthly operating reports, dealing with Chapter 11 counsel and the Office of the United States Trustee, and working with vendors and creditors to maintain working relationships. Finally, NHCG and Mr. Patel have extensive experience before this Court assisting in chapter 11 bankruptcy reorganizations with other limited-service hotels owned and operated within the "Platinum" family through their work in the Affiliate Cases.

13.      The Debtors incorporate the Verified Statement of Mr. Patel attached hereto.

14.     Section 327(a) of the Bankruptcy Code provides that the trustee, or debtor-in-possession, with the Court's approval, may employ accountants and other professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under [the Bankruptcy Code]." 11 U.S.C. § 327(a).

15.     To the best of the Debtors' knowledge, and except as disclosed herein and in the attached Verified Statement, NHCG has not acted as advisor to the Debtors, the Debtors' secured creditors, the Debtors' 20 largest unsecured creditors, the United States Trustee, or any other parties-in-interest, or their respective attorneys or accountants.

16.     To the best of the Debtors' knowledge, NHCG does not hold or represent any interest adverse to the Debtors' estates in the matters for which it is proposed to be employed and will not represent or advise any creditor of the Debtors or any other party in these cases in any matter that is related to this Chapter 11 case. As set forth above, NHCG serves in an identical capacity for which it seeks retention here in the Affiliate Cases.[1] The Debtors further acknowledge that, historically, the funds of each Debtor and Affiliate Debtor have been held in a centralized sweep account maintained by Platinum Management Services, LLC ("PMS")—another affiliate of the Debtors and the Affiliate Debtors.[2] As set forth in the *Consolidated Company Profile* filed in the Affiliate Cases, this process occurred in the ordinary course of business and allowed the affiliate hotels to provide internal short term support to one another

---

[1] NHCG has been retained as the Affiliate Debtors' independent restructuring and business advisory firm in the Affiliate Cases before this Court, which are Cookeville Platinum, LLC, Case No. 2:23-bk-03589; Destin Platinum, LLC, Case No. 3:23-bk-03596; Murfreesboro Platinum, LLC, Case No. 3:23-bk-03599; Platinum Gateway II, LLC, Case No. 3:23-bk-03597; VMV, LLC, Case No. 3:23-bk-03598; and Lebanon Platinum, LLC, Case No. 3:23-bk-03592 (collectively, the "Affiliate Debtors," with each individually being an "Affiliate Debtor").

[2] Neither the Debtors nor the Affiliate Debtors utilize centralized sweep accounts maintained by PMS as of the Petition Date.

4

during offseason periods. As a result, certain of the Debtors may indirectly have net receivables due from—or payables due to—certain other Debtors or Affiliate Debtors by and through PMS via the prepetition sweep account. Subject to the foregoing, NHCG is not aware of any cause of action or other claim between the Debtors or any Affiliate Debtor that would prevent NHCG from remaining disinterested in its role as restructuring advisory firm (NHGC) and chief restructuring officer (Mr. Patel) for the Debtors or the Affiliate Debtors.

17.     The Debtors' knowledge, information, and belief regarding certain of the matters set forth herein are based and made in reliance upon the attached Verified Statement.

18.     NHCG requests permission to file a first interim fee application on or after the 30th day following commencement of this case.  Unless otherwise ordered by the Court, all subsequent fee applications shall be filed no more often than once every 30 days.  No funds may be paid by the Debtors post-petition to NHCG for fees or expenses absent entry of an order approving the fees and expenses.

WHEREFORE, the Debtors respectfully request the entry of an Order authorizing and approving the Debtors' employment of NHCG as set forth in the Agreement, effective as of the Petition Date, as restructuring and general business advisors as of the Petition Date, with Mr. Patel to serve as the Debtors' Chief Restructuring Officer, and granting the Debtors such other and further relief as is just and proper.

Respectfully Submitted,

/s/ Henry E. ("Ned") Hildebrand, IV
Henry E. ("Ned") Hildebrand, IV
Gray Waldron
DUNHAM HILDEBRAND PAYNE WALDRON, PLLC
9020 Overlook Boulevard, Suite 316
Brentwood, Tennessee 37027
615.933.5851
ned@dhnashville.com
gray@dhnashville.com
*Counsel for the Debtors*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically on July 5, 2024. Notice of this filing was given via regular mail pursuant to Local Rule 2014-1 to the United States Trustee, all secured claim holders, the 20 largest unsecured creditors, and any party who has filed a written request for notices.

/s/ Henry E. ("Ned") Hildebrand, IV
Henry E. ("Ned") Hildebrand, IV

DocuSign Envelope ID: E525CA6E-8E8C-4473-A7FC-2BA614219921



June 27th, 2024

Amarillo Platinum, LLC
Midland Platinum, LLC
Midland Platinum II, LLC
Mitch Patel, Manager

Re:     <u>Contract Agreement of Engagement of National Hospitality Consulting Group</u>

Dear Mr. Patel:

1.      <u>Introduction</u>:

    This letter confirms the engagement of NATIONAL HOSPITALITY CONSULTING GROUP, (referred as "NHCG") by Amarillo Platinum, LLC, Midland Platinum, LLC, and Midland Platinum II, LLC (the "Hotels") or (the "Companies") to provide certain employees to the Companies to assist it with the services described below (the "Engagement"). This letter of engagement and the related supporting schedules constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided.

2.      <u>Scope of Services</u>:

    NHCG will provide the following individuals to work with you and your team in connection with the services (the "Services") outlined below:

    •     MANOJ PATEL will serve as the Chief Restructuring Officer ("CRO") of the Companies, effective June 27th, 2024. He will be responsible for interim management and financial advisory services provided to the Companies by NHCG.

    •     MANOJ PATEL and/or any of NHCG's employees will work directly with the Companies' managing partner (Managing Partner).

    •     MANOJ PATEL and/or any of NHCG's employees are expected to devote a significant amount of their business time performing the Engagement. NHCG, their agents, or independent contractors anticipates spending several days per week working on Companies business for a period of time, but will reduce their commitment as business permits.

    •     MANOJ PATEL may choose to utilize other temporary employees (the "Temporary Employees") who will report directly to the CRO and will be assisting the CRO in performing the Services in a cost-efficient manner.

As part of the aforementioned Services, NHCG anticipates supporting the Companies in the following areas:



### Liquidity Forecasting

- Evaluate current liquidity position and expected future cash flows.

- Provide oversight of Companies management and the initiatives taken to ensure execution of the 2024-2025 business plan to include the achievement of the key financial elements of the plan (including revenue, EBITDA, cash flow and availability under the bank line of credit), if applicable;

- Assist with management and control of cash disbursements; and

- Advise management on cash conservation measures and assist with implementation of cash forecasting and reporting tools as requested.

- Provide monitoring and management of the Companies' liquidity, capital resources and adherence to bank financial covenants, including direct and final oversight of disbursements and timing of restructuring initiatives included in the 2024-2025 business plan and, if determined by NHCG to be necessary in order to achieve the financial elements of 2024-2025 business plan, the pursuit of additional restructuring initiatives (including but not limited to arranging for external financing and further expense reductions);

### Asset Sales

- Assist the Companies in the negotiation of an Agency agreement; and

### Reorganization Alternatives

- Assist management with the analysis of alternatives for the restructure or refinance of existing indebtedness.

- Provide evaluation, assessment and negotiation, if necessary, involving any proposed new source of funding or alternative exit strategy;

- As directed by management, development and implementation of strategies to pursue Companies' selected reorganization alternatives; and

- Assist the Companies with the development and execution of alternative restructuring scenarios and multi-year business plans; and



- Advise and assist the Companies and other said professionals retained by the Companies in developing, negotiating and executing plan of reorganization scenarios, 363 sales or other potential sales of assets or business units.

## Contingency Planning

- Assist Companies personnel with the communications and negotiations, at your request and under your guidance, with lenders, creditors, and other parties in interest including the preparation of financial information for distribution to such parties in interest.

- Provide interaction and communication on a regular basis with the Companies' senior lender and its second lien lender if applicable;

- Advise and assist the Companies in the compilation and preparation of financial information necessary due to requirements of the Bankruptcy Court and/or Office of the US Trustee.

- Advise and assist the Companies in the preparation, analysis and monitoring of historical, current and projected financial affairs, analyses of cash receipts and disbursements, analyses of cash flow forecasts, analyses of various asset and liability accounts, analyses of any unusual or significant transactions between themselves and any other entities, and analyses of proposed restructuring transactions.

- Assist the Companies in the preparation of a going concern and liquidation valuations for a reorganization plan and/or negotiation purposes.

- Assist the Companies in Managing and executing the reconciliation process involving claims filed by all creditors.

- Advise and assist the Companies in identifying and/or reviewing preference payments, fraudulent conveyances and other causes of action.

- Advise and assist the Companies in its assessment of any bonus, incentive, retention, and/or severance plans.

- Advise and assist the Companies in reviewing executory contracts and providing recommendations to assume or reject.

- Attend meetings and court hearings as may be required as financial advisors and restructuring consultants to the Companies; and

- Render expert testimony and litigation support services, as requested from time-to-time by the Companies.



### Financing

- Advise the Companies in the process of identifying and reviewing debtor-in- possession ("DIP") financing and assist the Companies in preparing a collateral package in support of such financing.

### Other

- Assist with such other accounting and financial advisory services as requested by the Companies consistent with the role of a financial advisor and not duplicative of services provided by other professionals.

- Assist the Companies in developing procedures to ensure ongoing effective financial management and control beyond the term of the NHCG engagement.

We will keep you informed as to our staffing and will not add additional Temporary Employees to the assignment without first obtaining your consent that such additional resources are required and do not duplicate the activities of other employees or professionals. Moreover, we will attempt to utilize Companies personnel to fulfill such roles and will take such steps as may be necessary to avoid duplication with the Companies' other professionals. Furthermore, we will obtain your consent as to the areas of responsibility being filled by all Temporary Employees and will adjust the staffing level upwards or downwards as you direct.

In addition to these specific services, we understand that at your request and to the extent appropriate, such Temporary Employees may be asked to participate in meetings and discussions with the Companies, its lenders, other constituencies, and their respective professionals.

The Services of the Temporary Employees may be performed by NHCG or by any subsidiary of NHCG, as NHCG shall determine in consultation with the Companies, NHCG may also provide, with the prior approval of the Companies, non-officer Services through agents or independent contractors. References herein to NHCG and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary and to any such agents or independent contractors and their employees. Additionally, each Temporary Employee and NHCG or NHCG Subsidiary employee, agent, or independent contractor assigned to the Services for the Companies shall also agree to abide by the terms and conditions of all policies and

procedures of the Companies, including without limitation the Companies' Business Conduct Policy, Corporate Governance Guidelines, Code of Ethics and Whistleblower Policy.

3.      Privileged and Confidential Information and Work Product:

The Companies acknowledges that all advice (written or oral) given by the Temporary Employees to the Companies in connection with the Engagement is intended solely for the benefit

DocuSign Envelope ID: E525CA6E-8E8C-4473-A7FC-2BA614219921



and use of the Companies (limited to the Managing Partner) and we understand that the Companies has agreed to treat any advice received from us, whether orally or in writing, confidential and, except as provided in this Engagement Contract, will not publish, distribute or disclose in any manner any advice developed by or received from us without our prior written approval (except to the Companies' respective officers, directors, partners, employees, attorneys advisors lenders, or prospective lenders and persons who have a need to know such information in order to perform services under this Engagement Contract). Such approval shall not be unreasonably withheld.

4. <u>Cash on Account</u>:

Our agreed upon compensation for the Services to be rendered pursuant to this letter agreement is set forth on Exhibit C. Subject to prior written approval by the Companies, we will also be reimbursed for customary and reasonable out of pocket expenses including, but not limited to, travel, lodging, meals, costs of reproduction, reasonable out-of-pocket fees and other direct expenses that are submitted to the Companies within the first five days of the following calendar month after the expense was incurred in a detailed expense report supported by receipts and any other appropriate documentation.

Initially, the Companies will forward to us the amount of $0 which funds will be held "on account" to be applied to our professional fees, charges, and disbursements for the engagement (the "Initial Cash on Account") To the extent that this amount exceeds our fees, charges and disbursements upon the completion of the engagement, we will refund any unused portion.

We will send the Companies periodic invoices as referred in Schedule A for services rendered and charges and disbursements incurred on the basis discussed above, and in certain circumstances an invoice may be for estimated fees, charges and disbursements through a date certain. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of the Services. Upon transmittal of the invoice, we may immediately draw upon the initial Cash on Account (as replenished from time to time) in the amount of the invoice. The Companies agrees upon submission of each such invoice to promptly wire: the invoice amount to us as replenishment of the Initial Cash on Account (together with any supplemental amount to which we and the Companies mutually agree), without prejudice to the Companies' right to advise us of any differences it may have with respect to such invoice. We have the right to apply to any outstanding invoice (including amounts billed prior to the date hereof) up to the remaining balance, if any, of the Initial Cash on Account (as may be supplemented from time to time) at any time and subject to (and without prejudice) the Companies' opportunity to review our statements.

5. <u>Conflicts of Interest</u>:

Based on the list of interested parties (the "Potentially Interested Parties") provided by you, we have undertaken a limited review of our records to determine all professional relationships with the Companies and its significant parties in interest. From the results of such review, we are not aware of any conflicts of interest or relationships that would preclude us from performing the above Services for you. To the extent other employees of NHCG may have undertaken any advisory assignments in the past for parties in interest to the Companies, such NHCG employees and any



information in their possession will be kept separated by an ethical wall from any NHCG employees engaged hereunder.

We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. We will not accept an engagement that directly conflicts with this Engagement without your prior written consent.

6.      Limitation of Liability and Indemnification:

The parties intend that an independent contractor relationship will be created by this letter agreement.  As an independent contractor, NHCG will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. None of NHCG's employees serving as a Temporary Employee, including Mr. Patel in his capacity as CRO of the Companies, will be entitled to receive from the Companies a salary, bonus, compensation, vacation pay, sick leave, retirement, pension or social security benefits, workers compensation, disability, unemployment insurance benefits or any other Companies employee benefits, NHCG will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business (including those related to Mr. Patel and the Temporary Employees).

7.      Waiver of Jury Trial/Dispute Resolution:

The Companies agrees that neither it nor any of its assignees or successors' shall (a) seek a jury trial in any lawsuit, proceeding, counterclaim or any other action based upon or arising out of or in connection with the engagement of NHCG by the Companies or any services rendered pursuant to such engagement or (b) seek to consolidate any such action with any other action in which a jury trial cannot be or has not been waived, the provisions of this paragraph have been fully discussed by the Companies and NHCG and shall be subject to no exceptions.

8.      Term of Engagement:

This letter agreement shall be effective as of the date hereof and shall continue in effect until termination or completion of our engagement hereunder. Either you or I may terminate this letter agreement and our engagement (i) at any time upon the giving of at least five (5) business days prior written notice to the other party or (ii) immediately for Cause or upon a material breach of this Agreement by the other party. Termination shall not affect our right to receive payment for services performed, reimbursement for reasonable out-of-pocket expenses properly incurred (in accordance with the terms of this letter agreement), except in the event of a termination by the Companies for Cause or due to a material breach by NHCG of this Agreement, or the Companies obligations under section 7 herein. In the event of termination, other than by the Companies for cause or material breach by NHCG, prior to the end of a calendar month, you agree to pay as a pro rata portion of any set monthly compensation based upon the number of days elapsed in the month up to the effective time of termination.



For purposes of this Engagement Contract, "Cause' shall mean if

(i) any of the officers, partners, or directors of the Companies or the officers, directors, principals or other management level employees of NHCG is convicted of, admits guilt in a written document filed with a court of competent jurisdiction to, or enters a plea of nolo contendere to, an allegation of fraud, embezzlement, misappropriation or any felony;

(ii) any of the officers of the Companies willfully disobeys a lawful direction of the CRO or the court; or

(iii) a material breach of any of NHCG's or the Companies' material obligations under this Engagement Contract which is not cured within thirty (30) days of the written notice to breaching party describing in reasonable detail the nature of the alleged breach.

If any provision of this Engagement Contract shall be invalid or unenforceable, in whole or in part, then such provision shall be deemed to be modified or restricted to the extent and in the manner necessary to render the same valid and enforceable, or shall be deemed excluded from this letter agreement, as the case may require, and this letter agreement shall be construed and enforced to the maximum extent permitted by law as if such provision had been originally incorporated herein as so modified or as if such provision had not been originally incorporated herein, as applicable.

This Engagement Contract agreement shall constitute the entire understanding between the parties with respect to the subject matter and supersede all prior written and oral proposals, understandings, agreements and/or representations, all of which are merged herein. Any amendment or modification of this letter agreement shall be in writing and executed by each of the parties hereto.

9.      Governing Law and Jurisdiction:

       This Engagement Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Florida. The Courts of Florida shall have exclusive jurisdiction in relation of any claim, dispute or difference concerning the Engagement Agreement and any matter arising from it.

The parties hereto irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought to an inconvenient forum or to claim that those Courts do not have jurisdiction.

10.     Notice:

       All notices required or permitted to be delivered under this Engagement Contract shall be sent, if to us, to the address set forth above, to the attention of MANOJ PATEL and if to you, to the address for you set forth above, to the attention of your General Counsel, or to such other name or address as may be given, in writing, to the other party. All notices under the Engagement Contract shall be sufficient if delivered by email, facsimile, or overnight mail. Any notice shall be deemed to be given only upon actual receipt.



11.     <u>Continuation of Terms</u>:

        The terms of the Engagement Contract that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Sections 3, 6, 7, 10 and NHCG's Standard Terms and Conditions, attached hereto are intended to survive such termination or expiration and shall continue to bind all parties.

12.     <u>Citation of Engagement</u>:

        Notwithstanding anything to the contrary contained herein, after the engagement of NHCG becomes a matter of public record, we shall have the right to disclose our retention by the Companies or the successful completion of its services hereunder in marketing or promotional materials placed by the Companies, in its own brochures.

We look forward to working with you on this matter. Please sign and return a copy of this letter signifying your agreement with the terms and provisions herein. If you have any questions, please contact Manoj (Mike) Patel at (727) 647-8627.

Very truly yours,

**National Hospitality Consulting Group**

By: _Manoj Patel_____ Manoj Patel
Managing Member

Date: _7/1/2024_____

**Agreed and Accepted by**:

**Amarillo Platinum, LLC**

By: _Mitul Patel_____

Its: _Manager_____



**Midland Platinum, LLC**

By: Mitul Patel
AEC9F70C5C634DC...

Its: Manager

**Midland Platinum II, LLC**

By: Mitul Patel
AEC9F70C5C634DC...

Its: Manager

DocuSign Envelope ID: E525CA6E-8E8C-4473-A7FC-2BA614219921



SCHEDULE A

## **Compensation Requirement**

NHCG will be paid monthly on the first business day of each month to the CRO engagement of Manoj Patel and/or any employees of NHCG in the performance of the Services. Fees in connection with the Engagement will be based upon the time spent in providing the Services, multiplied by our standard hourly rates summarized as follows. Any further Temporary Employees would be as shown below. NHCG will be capped at an annual billable fee of $200,000.

|                              | Per Hour |
| ---------------------------- | -------- |
| Director of Operations       | $475     |
| Senior Financial Consultant  | $350     |
| Senior Consultant            | $300     |
| Senior Design Consultant     | $280     |
| Senior Associate             | $240     |
| Administrative               | $115     |
| Travel Time                  | $110     |

As deemed appropriate and necessary and in accordance with the Engagement Contract, in addition to the Temporary Employees, experts or individuals from NHCG's specialty service areas, including but not limited to tax, valuation and/or insurance consulting, may be called upon to perform specific advising from time to time to specialty services, multiplied by their hourly rates.

Hourly rates are subject to periodic adjustments. We will notify you of any such changes to our rates. Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work. In addition to the fees outlined above, NHCG will bill for reasonable expenses relative to the Engagement Contract which may include airfares, travel, meals and hotel accommodations, telephone, industry research relative to the Engagement Contract, counsel fees, duplicating and printing, etc. NHCG will also bill for reasonable direct expenses which are likely to be incurred on your behalf during this Engagement.



### National Hospitality Consulting Group STANDARD TERMS AND CONDITIONS

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement with Platinum Management Services, dated 27th, 2024. The Engagement letter and the Standard Terms and Conditions (collectively the "Engagement Contract") form the entire agreement between us relating to the Services and replace

and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

1. **Reports and Advice**

1.1     Use and purpose of advice and reports.  Any advice given or report issued by us is provided solely for your use and benefit and only in connection with the purpose in respect of which the Services are provided. Unless required by law, you shall not provide any advice given or report issued by us to any third party, or refer to us or the Services, without our prior written consent. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

2. **Information and Assistance**

2.1     Provision of information and assistance.  Our performance of the Services is dependent upon your providing us with such information and assistance as we may reasonably require from time-to-time.

2.2     Punctual and accurate information.  You shall use reasonable skill, care and attention to ensure that all information, we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required You shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3     No assurance on financial data.  While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation, or review of any kind of any financial statements or components thereof, Companies management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Companies.

2.4     Prospective financial information.  In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed upon



procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information. There will usually be differences between estimated and actual results because events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Companies.

3.      **Additional Services**

3.1      Responsibility for other parties.  You shall be solely responsible for the work and fees of any other party engaged by you to provide services in connection with the Engagement regardless of whether such party was introduced to you by us. Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you, other than our agents or independent contractors engaged to provide Services, without your written authorization.

4.      **Confidentiality**

4.1      Restrictions on confidential information; Both parties agree that all confidential information; received from the other party shall, only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, neither party will disclose the other party's confidential information to any third party without the other party's consent. Confidential information shall not include information that:

4.1.1            is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

4.1.2            is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information; or

4.1.3            is or has been independently developed by the recipient.

4.2      Disclosing confidential information.  Notwithstanding Clause 1.1 or 4.1 above, either party will be entitled to disclose confidential information of the other to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other party.

Internal quality reviews.  Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other NHCG entity or use it for internal quality reviews.

Maintenance of workpapers.  Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies.



**<u>Confirmation of Standard Terms and Conditions</u>:**

     I/We, Amarillo Platinum LLC, Midland Platinum, LLC and Midland Platinum II, LLC., agree to engage National Hospitality Consulting Group, upon the terms set forth in these Standard Terms and Conditions as outlined herein-above.

**Amarillo Platinum, LLC**

By: Mitul Patel
AEC9F70C5C634DC...

Its: Manager

**Midland Platinum, LLC**

By: Mitul Patel
AEC9F70C5C634DC...

Its: Manager

**Midland Platinum II, LLC**

By: Mitul Patel
AEC9F70C5C634DC...

Its: Manager

**Mitch Patel**

Mitul Patel ___ as Manager
AEC9F70C5C634DC...

and individually guaranteed

Date: 7/1/2024

# MANOJ PATEL

13421 Parker Commons Blvd, Fort Myers, Fl 33912. 727-647-8627 Phone
Email: mikepatel@nhcgfm.com

*Qualifications for* **EXECUTIVE-LEVEL PRIVATE EQUITY BUY AND BUILD PLATFORM**

Possesses thirty years of accomplished management experience in the real estate/hotel development industry. Adept in preparing financial and strategic plans and well as capital and operational budgets. Proven abilities in managing over $700M private equity acquisition and development company specializing in midscale to upper upscale full service hotels and luxury senior living facilities. Core competencies include:

| | | |
|---|---|---|
| Corporate Restructuring | Forecasting/Budgeting | Quality Assurance/TQM |
| Creative Financing Techniques | Forensic Accounting | Internet Marketing |
| Strategic Planning | Contract Negotiation | Renovation/Re-Branding |

## NOTABLE ACHIEVEMENTS

- Spearheaded the acquisition of a $112.25-million hotel projects.
- Played a vital role in expanding revenue up to 66%.
- Researched and recommended the disposition of assets at a substantial increased revenue.
- Slashed project debt by $65.5 million in three years by carefully managing debt and investment activities.
- Drastically improved cash flow by streamlining invoicing and collections procedures.
- Created Conor Acquisitions as a startup real estate fund and grew the portfolio in excess of $650 million in asset.
- Lead the Merger of Conor Acquisition for growth capital with American Colonial Capital.

## CAREER TRACK

AMERICAN COLONIAL CAPITAL, **President (Founder)**....................................................................2019-Present
*Merger and Acquisition*

- Develop a build to buy equity platform with over $3B in capitalization
- Develop an investment and operational division.
- Helped develop the executive team leaders.
- Manage the direction of the overall company's goal and direction.

FURNITURE THEORY, **Partner (Board of Director)**...............................................................................2015-2018
*Acquired a factory in China thru a partnership interest*

- Evaluate current financial position and expected future cash flows and create a business plan.
- Provide oversight of Company management and the initiatives taken to ensure execution of the 2015 and 2016 business plan to include the achievement of the key financial elements of the plan (including revenue, EBITDA, cash flow and availability under the bank line of credit), if applicable.
- Assist with management and control of cash disbursements with the objective to reduce overhead and increase revenue and market share.
- Advise management on cash conservation measures and assist with implementation of cash forecasting and reporting tools as requested.
- Assist Company with the communications and negotiations with lenders, creditors, and other

parties in interest including the preparation of financial information for distribution to such parties in interest.
- Provide marketing and market segmentation report in board of director meeting on a weekly basis.
- Assist procuring sales contract and trained all incoming sales personnel.


MATERIAL ELEMENTS, **Partner (Board of Director)**...........................................................................2015-2018

*Acquired a factory in China thru a partnership interest*

- Evaluate current financial position and expected future cash flows and create a business plan.
- Provide oversight of Company management and the initiatives taken to ensure execution of the 2015 and 2016 business plan to include the achievement of the key financial elements of the plan (including revenue, EBITDA, cash flow and availability under the bank line of credit), if applicable.
- Assist with management and control of cash disbursements with the objective to reduce overhead and increase revenue and market share.
- Advise management on cash conservation measures and assist with implementation of cash forecasting and reporting tools as requested.
- Assist Company with the communications and negotiations with lenders, creditors, and other parties in interest including the preparation of financial information for distribution to such parties in interest.
- Provide marketing and market segmentation report in board of director meeting on a weekly basis.
- Assist procuring sales contract and trained all incoming sales personnel.


GLOBAL PERSPECTIVE FUNDING, **Partner (Board of Director)**.........................................................2015-Present

*Created a full service Commercial Real Estate lending division, a subsidiary of NHCG*

- Evaluate current financial position and expected future cash flows and create a business plan.
- Provide oversight of Company management and the initiatives taken to ensure execution of the 2015 & 2016 business plan to include the achievement of the key financial elements of the plan (including revenue, EBITDA, cash flow and availability under the bank line of credit), if applicable.
- Competent in using research, analytical and data management techniques and tools.
- Monitor credit lending process and ensure compliance of the procedure with its policies.
- Decipher the risk level involved in transactions and help prepare sound risk mitigation measures to provide insight to senior underwriter.
- Create Broker opinion of Value internally for underwriting purposes.
- Provide stock and partnership valuation for partnership buyout.
- Assist in reviewing all incoming clients profit & loss statement, balance sheet and general ledger.
- Assist senior underwriter in forecast modeling, assumption models and overall review of all files before committee presentation.


ALPHA CONTRACTOR, **Partner (Board of Director)**..........................................................................2014-2018

*Created a full service Design, Construction Management and Consulting Company dedicated to the Hospitality, Office, Multifamily, Retail and Residential industry.*

- Evaluate current financial position and expected future cash flows and create a business plan.
- Provide oversight of Company management and the initiatives taken to ensure execution of the 2015 & 2016 business plan to include the achievement of the key financial elements of the plan

(including revenue, EBITDA, cash flow and availability under the bank line of credit), if applicable.

- Assist with management and control of cash disbursements with the objective to reduce overhead and increase revenue and market share.
- Advise management on cash conservation measures and assist with implementation of cash forecasting and reporting tools as requested.
- Provide monitoring and management of the Company's liquidity, capital resources and adherence to bank financial covenants.
- Assist team in project management of all on going assets with overview and analysis of time line and lenders requirement with current lenders and prepare reports to provide to lending division for intake of exit or permanent financing for each asset.
- Assist in initial design of each project with periodic review on a monthly basis.
- Help project manager to overcome any and all design negotiations with franchisor.


CONOR ACQUSITIONS, **Owner** ................................................................................................2012-Present

*Created a private equity fund for the acquisition of hospitality assets throughout the US.*

- Evaluate current financial position and expected future cash flows and create a business plan.
- Provide oversight of Company management and the initiatives taken to ensure execution of all business plans to include the achievement of the key financial elements of the plan (including revenue, EBITDA, cash flow and availability under the bank line of credit), if applicable.
- Assist with management and control of cash disbursements with the objective to reduce overhead and increase revenue and market share.
- Advise asset manager on cash conservation measures and assist with implementation of cash forecasting and reporting tools as requested.
- Provide monitoring and management of the Company's liquidity, capital resources and adherence to bank financial covenants, including direct and final oversight of disbursements and timing of repositioning initiatives.
- Assist in the negotiation of real estate, operational agreement, private placement memorandum and franchise agreement with various counsel.
- Review and provide comments to underwriters forecast and assumptions for all real estate acquisition models prior to board of director voting.
- Provide evaluation, assessment and negotiation, if necessary, involving any proposed new source of funding or alternative exit strategy.
- Provide all exit analysis with DCF analysis and broker opinion of value supporting with market comparable.
- Compile financial reconciliations of Property Management System Reports (Data Analysis), Check Register, General Ledger, Bank Statement, review of STR Report against PMS Data, Accounts Receivable aging reports and assisting in preparation of Monthly Operating Reports.
- Assist as needed by company a market audits and promotional strategies.
- Provide physical asset assessment for upcoming or future Product Improvement Plan as needed by investment committee.
- Provide Franchise evaluation and negotiation as needed.
- Provide market analysis during the underwriting process
- Manage the underwriting process with equity partners and lenders.


GPS REALTY, **Owner** ...................................................................................................................2006-Present

*Created a full service commercial firm dedicated to the hospitality industry.*

- Planned and led the preparation of the capital investment budget, five-year strategic plan, annual operating budget, and quarterly forecasts. Structured and conducted budget analyses for clients.
- Analyzed financial strategies and project feasibility. Managed relationships with commercial/investment banks and the financial community.
- Prepare offering for commercial real estate assets for clients.
- Designed and administered an audit program to determine the market value of the client's real estate portfolio.
- Provided business planning and analysis support to clients.

NATIONAL HOSPITALITY CONSULTING GROUP, **Owner** ..............................................................2006-Present

*Created a full service brokerage and consulting company dedicated to the hospitality industry.*

- Evaluate current financial position and expected future cash flows and create a business plan.
- Provide oversight of Company management and the initiatives taken to ensure execution of the 2012-2016 business plan to include the achievement of the key financial elements of the plan (including revenue, EBITDA, cash flow and availability under the bank line of credit), if applicable.
- Assist with management and control of cash disbursements with the objective to reduce overhead and increase revenue and market share.
- Advise management on cash conservation measures and assist with implementation of cash forecasting and reporting tools as requested.
- Provide monitoring and management of the company's liquidity, capital resources and adherence to bank financial covenants, including direct and final oversight of disbursements and timing of restructuring initiatives included in the 2011 business plan; and restructuring initiatives.
- Assist the company in the negotiation of an Agency agreement.
- Assist the company with the analysis of alternatives for the restructure or refinance of existing indebtedness.
- Provide evaluation, assessment and negotiation, if necessary, involving any proposed new source of funding or alternative exit strategy.
- Assist the company with the development and execution of alternative restructuring scenarios and multi-year business plans.
- Advise and assist the company and other said professionals retained by the company in developing, negotiating and executing plan of reorganization scenarios, 363 sales or other potential sales of assets or business units.
- Assist company with the communications and negotiations with lenders, creditors, and other parties in interest including the preparation of financial information for distribution to such parties in interest.
- Provide interaction and communication on a regular basis with the company's senior lender and its second lien lender if applicable.
- Advise and assist the company in the compilation and preparation of financial information necessary due to requirements of the Bankruptcy Court and/or Office of the US Trustee (MOR), financial analysis inclusive of short terms, long term budgets and forecasting as needed.
- Advise and assist the company in the preparation, analysis and monitoring of historical, current and projected financial affairs, analyses of cash receipts and disbursements, analyses of cash flow forecasts, analyses of various asset and liability accounts, analyses of any unusual or significant transactions between themselves and any other entities, and analyses of proposed restructuring transactions.
- Assist the company in the preparation of a going concern and liquidation valuations for a reorganization plan and/or negotiation purposes.
- Assist the company in Managing and executing the reconciliation process involving claims filed by all creditors.

- • Render expert testimony and litigation support services, as needed by counsel of the company as to the feasibility of re-organization including cash collateral issues.
- • Advise the company in the process of identifying and reviewing debtor-in-possession ("DIP") financing and assist the Company in preparing a collateral package in support of such financing.
- • Assist with such other hotel accounting functions and financial advisory services as requested by the company consistent with the role of a financial advisor and not duplicative of services provided by other professionals.
- • Assist the company in developing procedures to ensure ongoing effective financial management and control beyond the term of the NHCG engagement.
- • Assist in compilation of documents for schedule and prepare a summary report of company's business operation.
- • Conduct a feasibility study on debtor's hotel asset as needed by company's counsel;
- • Conduct a Broker Opinion of Value.
- • Compile financial reconciliations of Property Management System Reports (Data Analysis), Check Register, General Ledger, Bank Statement, review of STR Report against PMS Data, Accounts Receivable aging reports and assisting in preparation of Monthly Operating Reports.
- • Assist as needed by company a market audits and promotional strategies.
- • Provide physical asset assessment for upcoming or future Product Improvement Plan as needed by company's counsel.
- • Provide Franchise evaluation and negotiation as needed.

CAPITAL PROPERTIES GROUP, **Head of Commercial Division,** ............................................................2005-2006

*Created and assembly an entire commercial division within 1 years. Scope of responsibility included, separating the division into separate real estate industry such as retail, hotels, warehouse, industrial,etc.*

- • Planned and led the preparation of the capital investment budget, five-year strategic plan, annual operating budget, and quarterly forecasts. Structured and conducted budget analyses for clients.
- • Analyzed financial strategies and project feasibility. Managed relationships with commercial/investment banks and the financial community.
- • Prepare offering for commercial real estate assets for clients.
- • Designed and administered an audit program to determine the market value of the client's real estate portfolio.
- • Provided business planning and analysis support to clients.

CENTURY 21 COMMERCIAL, **Head of Commercial Division, CEO** ......................................................2004-2005

*Created and assembly an entire commercial division within 1 years. Scope of responsibility included, separating the division into separate real estate industry such as retail, hotels, warehouse, industrial,etc.*

- • Planned and led the preparation of the capital investment budget, five-year strategic plan, annual operating budget, and quarterly forecasts. Structured and conducted budget analyses for clients.
- • Analyzed financial strategies and project feasibility. Managed relationships with commercial/investment banks and the financial community.
- • Prepare offering for commercial real estate assets for clients.
- • Designed and administered an audit program to determine the market value of the client's real estate portfolio.
- • Provided business planning and analysis support to clients.

<u>S</u><small>HELDON OF</small> <small>A</small><small>RCADIA</small> 3 LLC, **President of Acquisition and Operations/Chief Financial Officer**.....1998-2004

*Led the acquisition, analysis, operation, and management of hotel assets for this multimillion-dollar development company. Scope of responsibility encompassed P&L, facilities management, and technology oversight.*

**Finance**

- Directed all accounting, financial, and treasury functions and practices, including preparing fiscal records and financial reports for the CEO. Coordinated financial communications and presentations to the operating and executive committees and the board of directors.
- Planned and led the preparation of the capital investment budget, five-year strategic plan, annual operating budget, and quarterly forecasts. Structured and conducted budget analyses.
- Analyzed financial strategies and project feasibility. Managed relationships with commercial/investment banks and the financial community. Negotiated bank financing and maintained bank confidence.
- Designed and administered an audit program to determine the market value of the company's real estate portfolio. Executed daily audit operations.
- Sold excess real estate land into land leases to generate positive rental income.
- Provided business planning and analysis support to two business units serving the hotel markets.

**Operations**

- Conceptualized, authored, and implemented operation-specific policies.
- Led the re-engineering of interdepartmental processes using TQM and JIT techniques, resulting in reduced expenses, improved inventory utilization, and recognition of previously lost revenues.
- Reviewed and audited purchased assets to determine staffing and hiring requirements.
- Trained and supervised 15 employees, including scheduling work hours, resolving conflicts, and instituting a salary structure. Educated front-desk supervisors and desk clerks in effectively upselling room rentals. Motivated staff to significantly increase their productivity.
- Resolved customer disputes at an executive level.

---

**A**<small>CADEMIC AND</small> **P**<small>ROFESSIONAL</small> **C**<small>REDENTIALS</small>

<u>University Semester Courses</u>
**Microeconomic Principles** - Florida Atlantic University-1993
**Principles of Accounting** – Florida Atlantic University-1994
**Principles of Financial Management** - Florida Atlantic University-1994
**Real Estate Law** - Florida Atlantic University-1994
**Macroeconomic Principles** – Florida Atlantic University-1997
**Introduction to Management & Organizational Behavior** - Florida Atlantic University -1997
**Principles of Accounting 2** - Florida Atlantic University-1997
**Reason and Value** - Florida Atlantic University-1997
**Principles of Real Estate** - Florida Atlantic University-1997
**Introduction to Social Statistics** - Florida Atlantic University-1997
**Money and Banking** - Florida Atlantic University-1997
**International Business** - Florida Atlantic University-1997
**Real Estate investment and Development** - Florida Atlantic University-1997
**Quantitative Methods in Administration** - Florida Atlantic University-1997
**Real Estate Sale Associate License** - 2005 (63 hours)
**Real Estate Sales Associate Post Licensing** - 2007 (45 hours) continuing education
**Real Estate Sales Associates Continuing Education** - 2009, (14 hours)
**Real Estate Sales Associates Continuing Education** - 2011, (14 hours)
**Real Estate Sales Associates Continuing Education** - 2013, (14 hours)
**Real Estate Sales Associates Continuing Education** - 2015, (14 hours)
**Hotel Management** - Broward College- 1997
**Hospitality and Tourism** - Broward College 1997

**Degree: Florida Atlantic University- College of Business- Finance- B.B.A., B.S**


**Certifications**

**On the Job Training** – Various Hotel/Motel Owned by Family and Partners (All departments) 1990-2004
**General/Operations Management Certification** - Choice Hotel Management/Comfort Inn/Sleep Inn -2001
**Operations Management Certification** - Ramada Management Institute/Ramada Ltd./Cendant Corporation – 2001
**STLI**—Analytisc Certificate Sneak Peek- 2021
**STLI-** Innovation Certificate Sneak Peek-2021


**Workshop and Seminars**

**CFA 2008- Basics for underwriter-** 2008
**CFA 2008- Fraud Awareness Workshop-** 2008
**Value Express- Financial Statement Analysis-**2008
**MTM-Creating value in a brave New World (Lenders, Receivers & Investor)-** 2011
**MTM-Creative Solutions- Repositioning urban and vacation ownership hospitality asset-** 2011
**MTM-Debt and Equity for assets today-**2011
**MTM- Borrowers and Workouts-** 2011
**MTM- Working with the Media-** 2011
**MTM-CMBS and its Pits falls-** 2011
**MTM- Underwriting deal in the current market-** 2011
**MTM- Up your NOI! Turn around operations and enhancing value-** 2011
**MTM-Big Capital-** 2012
**MTM-Tips, Traps & Trick for dealing with Trouble Assets-** 2012
**MTM- ADA Compliance & Claims Preventions- New Rules-** 2012
**MTM- Alternative Financing for New Development-** 2012
**MTM- Accessing Oversees Capital with EB5-financing-** 2012
**MTM-Market Trends for the next two years (HWE)-** 2012
**MTM- Add Value with Repositioning-** 2012
**MTM- Great partners make Great Projects- Joint Ventures and other options-** 2012
**MTM-Profitable non-Branded Management Strategies-** 2012
**MTM- Creating and Preserving Asset Value- Capital Improvement-** 2012
**MTM- Big Player- Real Money-** 2013
**MTM-Development- Fund allocation-** 2013
**MTM- EB5- Financing for New Construction-** 2013
**MTM-ADA Compliance on your Asset-** 2013
**MTM-State of CMBS Markets-** 2013
**MTM- Strategies for Distress Asset- Workout/Receiverships/Takeovers-** 2013
**MTM- Driving the Top Line and Maximizing your Profits-** 2013
**MTM- Maximizing Returns and Values-** 2013
**MTM-Capital Market- Transactions, Financing and Market Value-** 2014
**MTM-Valuation and Predications (HVS)-** 2014
**MTM- Mix Use Development-** 2014
**MTM- EB5 and Beyond-** 2014
**MTM-Using Public-Private Partnerships to Get Deals Done-** 2014
**MTM- Financing Smaller Deals- $30 Million or Less-** 2014
**MTM- How to develop and finance successful luxury projects-** 2014
**MTM-Chinese Investment/Finance in the Year of the Horse-**2014
**MTM-Development & Finance, Hotel Mixed use with Retail and/or Office-** 2014

**MTM-Financing Bigger deal $30 million +- 2014**
**MTM- Values and Cap Rate (HVS)- 2014**
**MTH- Hotel Legal issues affecting Hotel Industry- 2014**
**MTM- Distress Assets and Opportunistic Investments- 2014**
**MTM-Financing Bread and Butter Deal- 2015**
**MTM-Playing with a full capital stack- 2015**
**MTM-Understanding Chinese Investment Opportunities-2015**
**MTM- Keys to successful development- 2015**
**MTM- Valuations and Predictions (HVS)-2015**
**MTM- Liquidity in the financing market- 2015**
**MTM-Repositioning and value-add Opportunities- 2015**
**MTM-Innovative financing alternative for development –Crowd funding & EB5- 2015**
**MTM-Acquisition strategies that make and shake markets- 2015**
**HC-Rising rates spurs lending- 2015**
**HC-Acceleration Mode- 2015**
**HC-Risk assessment in CMBS Market- 2015**
**HC-Inflation Adjusted Rate is Back- 2015**
**HC-FX and Oil- 2015**
**HC-AirBNB and OTA's- 2015**
**HC-More Brands Better?- 2015**
**HC-Year of the Select Service- 2015**
**HC-Buy vs. Sell in active market- 2015**
**HC-Durable Cash flow- 2015**
**HC-Good time for everything- 2015**
**HC-Brand Proliferations- 2015**
**HC-Food & Beverage Trend- 2015**
**HC-Service Trend- 2015**
**HC-Asset Management- YTD Trend/thoughts- 2015**
**HC-Corporate Growth Rate- 2015**
**HC-Capital Market Trend-2015**
**ALIS- Asset Management- Optimizing the Value of your Asset-2015**
**ALIS- Acquisitions Strategies- Financial Engineering for Maximum Yield- 2015**
**ALIS-Public Subsidies and Creative Finance- 2015**
**ALIS- The Luxury Segment- 2015**
**ALIS- When and how to select the right development team- 2015**
**ALIS- CAPEX- The Good, the Bad, and the Ugly- 2015**
**ALIS- A Focus on Deals between $15 to $30 Million- 2015**
**ALIS- How to select and negotiate a management contract- 2015**
**ALIS- Cross Boarder Real Estate Investment- 2015**
**ALIS-How to finance new construction- 2015**
**ALIS- Wallstreet outlook- 2015**
**ALIS- Outlook from Lenders, Private Equity, REIT & Hedge Fund for 2015 and beyond- 2015**
**NYU- Private equity Revisited: with Equity Remaning Abundant, the Movers and Shakers Expound on Types of Deal they are Seeking (Finance)- 2015**
**NYU- Growth Strategy: A Focus on Growth and Branf expansion: The Best Way to Go (Finance)- 2015**
**NYU- Franchising: Its's Powering The Industry's Growth (Operations)- 2015**
**NYU- The Hotel Industry's recent Transactions: An Insiders Perspective on the Current Hospitality Marketplace (Finance)- 2015**
**NYU- Boutique Hotels: Sustainable Asset Class or Bridge to the Big Brands (Hospitality)- 2015**
**NYU- The Evloving economy Segment: Less can be more for Investors and Consumers (Hospitality)- 2105**
**NYU- Buy, Borrow, or Sell? How are REITS Behaving Now? (Hospitality)- 2015**
**NYU- Data-Driven Decisions: Nice or a Necessity" (Hospitality)-2015**
**NYU- Are we in a Capital Market Bubble? And How is it Influencing the Markets? (Finance)-2015**
**NYU- Next Gen Investors and Advisors Reveal Why, Where, and When they'll spend (Operations)- 2015**

**NYU- The Lending Environment: What is Going On In The Debt Market? (Finance)-** 2015
**NYU- Revenue Management and Profit Optimization: Maximizing the Total Asset-(Operations)-** 2015
**NYU- Social Center of Hotels: How Has This Evolved? Br, Restaurants, And Nightlife as Differentiations (Operations)-** 2015
**NYU- Hotel Management Agreements (Finance)-** 2015
**NYU- Riding The Rising Tide-** 2015
**Sports Tourism and Learning Institute (STLI) – Essential DEI practices and Fundamentals to implement at organization- 2020**
**STLI- Dimensions of Diversity and appropriate Diversity Voc- 2020**
**STLI- Stream and Monetize every Game without Staff- 2020**
**STLI- Athletic Trainers 101- 2020**
**STLI- Sports Event and community Development: Targeting Urban Growth or Resident Needs- 2020**
**STLI- ETA leadership Series- 2021**
**STLI- Seven New Directions and Opportunities for Cities in the Aftermath of COVID-19- 2021**
**STLI- The new sports organization paradigm: Agility, empathy, problem-solving, and inclusiveness- 2021**
**First Out of the Gate: learning and Perspectives from Destinations that have hosted Post-COVID events- 2021**

**Member**, Asian American Hoteliers Association – 1997- current


**<u>Reference of Properties with NHCG within the last four years:</u>**

| Client | Location | Client | Location |
|---|---|---|---|
| Adobe Hacienda Motel | Hollywood, FL | Comfort Suites | Tampa, FL |
| America Best Value Inn | Pensacola, FL | Comfort Inn | Lumberston, SC |
| Ashwood Plaza- Retail Building | Kennasaw, GA | Comfort Suites | Mobile, AL |
| Austosh Group- Office Building | Ponte Vedra, FL | Comfort Suites | Lindell, TX |
| Bajio 76 -Restaurant | Naples, FL | Comfort Suites | Jacksonville, FL |
| Bajio 78- Restaurant | Fort Myers, FL | Country Inn & Suites | St. Augustine, FL |
| Best Western Inn | Lanatana, FL | Country Inn & Suites | Lumberton, SC |
| Best Western Inn & Suites | Cecilfield, FL | Crossman Wanta | Okeechobee, FL |
| Best Western Inn & Suites | Hornlake, MS | Days Inn | St. Petersburg, FL |
| Best Western Inn & Suites | Mayport, FL | Days Inn | St. George, SC |
| Best Western Inn Airport | Orlando, FL | Days Inn | Satellite Beach, FL |
| Best Western Inn | Vero Beach, FL | Econolodge | Eureka, MO |
| Cambria Suites | Savannah, GA | Econolodge | Cocoa, FL |
| Candlewood Suites | Jacksonville, FL | Fairfield Inn & Suites | Vicksburg, MS |
| Candlewood Suites | Melbourne, FL | Four Points | Jacksonville, FL |
| Comfort Suites | Palm Bay, FL | Gulf Tower | St. Petersburg, FL |
| Comfort Inn & Suites | Jupiter, FL | Hampton Inn & Suites | Jacksonville, FL |
| Comfort Inn | Vicksburg, MS | Hampton Inn | Cummings, GA |
| Comfort Inn | McComb, MS | Hampton Inn | N. Toledo, OH |
| Comfort Inn | Pearl, MS | Hampton Inn | Melbourne, FL |
| Comfort Inn | Grenada, MS | Holiday Inn Express | Canton, MS |
| Comfort Inn | Charlotte, NC | Holiday Inn Express | Canton, GA |
| Comfort Inn | Orange Park, FL | Hampton Inn | Canton, MS |
| Comfort Suites | Stockbridge, GA | Hampton Inn | Port Charlotte, FL |
| Comfort Suites | Kennesaw, GA | Holiday Inn Express | Jacksonville, FL |
| Holiday Inn Express | New Orleans, LA | Holiday Inn Express | Port St Lucie, FL |
| Holiday Inn Express | Perry, FL | Holiday Inn Express | Port Charlotte, FL |
| Holiday Inn Express | Yulle, FL | Best western Plus | Kingsland |
| Holiday Inn Express | Tavares, FL | Holiday Inn | Jacksonville, FL |
| Hojo Inn | N. Fort Myers, FL | Hojo Inn | Vero Beach, FL |

| | | | |
|---|---|---|---|
| *JDH Wade Green Plaza* | *Atlanta, GA* | *Jefferson Motel* | *St. Petersburg, FL* |
| *Microtel* | *Jacksonville, FL* | *Microtel Airport* | *Jacksonville, FL* |
| *Midtowne Inn & Suites* | *San Antonio, TX* | *Motel 6* | *N. Fort Myers* |
| *Motel 6* | *Tampa, FL* | *Motel 6* | *Cleburne, TX* |
| *Neodesha Inn* | *Neodesha, KC* | *Palmetto Lodge* | *Yamasse, SC* |
| *Pier II Resort Motel* | *Okeechobee, FL* | *Quality Inn* | *Fort Myers, FL* |
| *Quality Inn* | *St. Augustine, FL* | *Quality Inn* | *Orlando, FL* |
| *Quality Inn* | *Sarasota, FL* | *Royal Inn & Suites* | *Sanford, FL* |
| *Shell Gas Station* | *Statesville, SC* | *Sleep Inn* | *Atlanta, GA* |
| *Sunray Motel* | *Frostproof, FL* | *Super 8* | *Dania, FL* |
| *Super 8* | *St. George, SC* | *Super 8* | *Naples, FL* |
| *Super 8* | *Vicksburg, MS* | *Super 8* | *Daytona, FL* |
| *Super Budget Inn* | *Hollywood, FL* | *Travel Inn* | *Port Pierce, FL* |
| *Wingate Inn* | *Vicksburg, MS* | *York Hotel* | *Yorktown, PA* |
| *Sunshine Grocery Store* | *Naples, FL* | *Affordable Homes* | *Fort Pierce, FL* |
| *Marthon Portfolio* | *Long Beach, Ca* | *Springhouse Senior Living* | *Cartersville, GA* |
| *Springhouse Independent* | *Lithia Springs, GA* | *Bravo Supermarket* | *Naples, FL* |
| *Plantation Inn* | *Fort Lauderdale, FL* | *Cambria Suites* | *Fort Lauderdale, FL* |
| *Hampton Inn* | *Clewsiton, FL* | *La Quinta Inn* | *Fort Myers, Fl* |
| *Days Inn* | *Fort Myers, FL* | *Hojo Inn* | *Fort Myers, Fl* |
| *Holiday Inn Express* | *Port Charlotte, FL* | *Courtyard Inn* | *Memphis, Tn* |
| *ACC Fund* | *Los Angles, CA* | *Merit Point Capital Fund* | *Atlanta, GA* |
| *American Mortgage Bankers* | *San Diego, CA* | *PDM 1 Fund* | *Tampa, FL* |

*Additional references is available.*



## Expert Witness Sample Work History

| Case Number | Name | Judge | Scope of Work | Deposed | Testified at Trail | Assumptions Approval/Status | District |
|---|---|---|---|---|---|---|---|
| 3:11-00252 | In re: First Coast Hospitality, LLC | Paul M. Glenn | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | Yes | Yes | More Favorable, settled at mediation | Middle District of Florida |
| 3:11-00678 | In re: Hotel Management Group, Inc | Jerry A. Funk | Feasibility, Interest rate, Broker Opinion of Value | No | Yes | Yes, settled at mediation | Middle District of Florida |
| 3:11-00253 | In re: Treasure Coast Hospitality, LLC | Paul M. Glenn | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | Yes | Yes | More Favorable, contested confirmation, Debtor was confirmed | Middle District of Florida |
| 3:11-04371 | In re: RS & RS, Inc | Paul M. Glenn | Feasibility, Broker Opinion of Value | No | Yes | Yes | Middle District of Florida |
| 3:10-07877 | In re: Beaches Hospitality, LLC | Jerry A. Funk | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | No | No | Settled at mediation | Middle District of Florida |
| 3:10-07878 | In re: East Beach Hospitality, LLC | Jerry A. Funk | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | No | No | Settled at mediation | Middle District of Florida |
| 9:11-25607 | In re: Krishna Realty, Inc | Paul G. Hyman | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | No | No | Settled informally | Southern District of Florida |
| 6:11-02087 | In re: Laxmi Inc of Palm Bay | Karen Jenniman | Feasibility, Interest rate, Management turn around, Broker Opinion of | Yes | Yes | More Favorable, settled informally | Middle District of Florida |

| | | | Value | | | | |
|---|---|---|---|---|---|---|---|
| 10:42559 | In re: Radha Realty, Inc | Eric P Kimble | Feasibility, Interest rate, Management turn around | Yes | Yes | More Favorable, but case was dismissed later on | Southern District of Florida |
| 3:11-01144 | In re: Baymeadows Lodging, Inc | Paul M Glenn | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | Yes | Yes | More Favorable, settled at mediation | Middle District of Florida |
| 6:11-02234 | In re: Five Star Motel Investments, Inc | Karen Jenniman | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | Yes | Yes | More Favorable, settled at mediation | Middle District of Florida |
| 6:11-00727 | In re: Gray Star Motel Investments, Inc | Karen Jenniman | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | No | No | Settled informally | Middle District of Florida |
| 3:11-00273 | In re: J&M Enterprises of St Augustine, Inc | Paul M. Glenn | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | Yes | Yes | More Favorable, contested confirmation, case was confirmed | Middle District of Florida |
| 3:11-02057 | In re: Mayport Properties, LLC | Jerry A. Funk | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | Yes | Yes | More Favorable, settled at mediation | Middle District of Florida |
| 3:11-00712 | In re: Shivam Beach, LLC | Jerry A. Funk | Feasibility, Interest rate | Yes | No | Settled at mediation | Middle District of Florida |
| 3:11-02409 | In re: Durgama, Inc | Paul M Glenn | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | Yes | Yes | More Favorable, settled at mediation | Middle District of Florida |
| 6:11-08741 | In re: Reema Hospitality, Inc | Arthur B Briskman | Feasibility | Yes | Yes | Yes | Middle District of Florida |
| 11-32840 | In re: Laxmi Realty, Inc | Raymond B Ray | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | No | Yes | Settled informally | Middle District of Florida |
| 11-20163 | In re: Sole Lido Development, LLC | K R May | Feasibility, | No | No | Settled at mediation | Middle District of Florida |

| 11-20211 | In re: Orion Beach Development VI, LLC | K R May | Feasibility | No | No | Settled at mediation | Middle District of Florida |
|---|---|---|---|---|---|---|---|
| 11-20210 | In re: Orion Beach Development V, LLC | K R May | Feasibility | No | No | Settled at mediation | Middle District of Florida |
| 11-04894 | In re: Sunny Enterprises of Florida, LLC | K R May | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | Yes | Yes | Yes, but case was dismiss due to Debtor actions | Middle District of Florida |
| 11-10337 | In re: Windchase Enterprises, LLC | David W Huston III | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | No | Yes | Settled informally | Northern District of Mississippi |
| 13-35788-11 | In re: Mexia Lodging, LP | Stacey G. Jernigan | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | No | Yes | Settled informally | Northern District of Texas Dallas Division |
| 12-30847 | In re: Shree Hari, Inc | Stacy G. Jernigan | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | Yes | Yes | Settled at mediation | Northern District of Texas Dallas Division |
| 12-64351 | In re: Anjali Hotel Management, LLC | Marget H Murphy | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | Yes | Yes | Settled informally | Northern District of Georgia Atlanta Division |
| 3:12-01611 | In re: Abama, LLC | Paul M Glenn | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | No | No | Settled at mediation, we purchase the Note and provided Exit Financing | Middle District of Florida |
| 12-50365 | In re: Archana Hospitality, LLC | Karen K. Specie | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | No | No | Settled informally, we purchased the Note from Movant and provided Exit Financing | Northern District of Florida |
| 6:12-05432 | In re: BGS Hospitality, Inc | Karen Jenniman | Feasibility, Management turn around, Broker Opinion of Value | No | No | Settled informally and acquired the Note thru investor and provided exit financing | Middle District of Florida |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6:12-05435 | In re: GNB Properties, Inc | Karen Jenniman | Feasibility, Management turn around, Broker Opinion of Value | No | No | Settled informally and acquired the Note thru investor and provided exit financing | Middle District of Florida |
| 3:11-09128 | In re: Historical Properties, LLC | Paul M Glenn | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | No | No | Settled at mediation | Middle District of Florida |
| 3:11-09119 | In re: Jai Amabaji, Inc | Paul M Glenn | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | No | No | Settled informally | Middle District of Florida |
| 12-80229 | In re: LPB, LLC | Letitia Z. Paul | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | No | No | Settled informally | Southern District of Texas Huston Division |
| 11-53441 | In re: Paresh Makan | | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | No | Yes | More Favorable, Contested Confirmation, Debtor was confirmed and Judge valued the asset based on my testimony rather than the two appraisers. | Western District of Texas San Antonio Division |
| 6:11-00251 | In re: Siddhi Vinayak, Inc | Karen Jenniman | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | Yes | Yes | More favorable, settled informally | Middle District of Florida |
| 11-04436 | In re: Vishnu Enterprises, Inc | MAM | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | No | No | Settled informally | Southern District of Alabama |
| 3:11-00250 | In Re: Suvichar Corp | Paul M Glenn | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | Yes | Yes | Settled informally | Middle District of Florida |
| TBA | In re: Shree Abama, Inc | TBA | Feasibility, Interest rate, Management turn around, | No | No | Settled informally | Southern District of North Carolina |

13421 Parker Commons Blvd, Suite 102, Fort Myers, Fl 33912   Telephone 888-879-9056      Fax 888-376-3210

| Case Number | Debtor | Attorney | Issues | | | Resolution | District |
|---|---|---|---|---|---|---|---|
| | | | Broker Opinion of Value | | | | |
| 6:11-14088 | In re: SAJ Lodging, Inc | Karen Jenniman | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | Yes | Yes | Settled at my deposition | Middle District of Florida |
| 2:12-02762 | In re: Cecil Property Management, LLC | Paul M Glenn | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | Yes | Yes | More Favorable, contested confirmation, debtor was confirmed | Middle District of Florida |
| 11-26273 | Sani Enterprises, Inc | Raymond B Ray | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | No | No | Case was dismiss, we brought in investor to acquire the note and currently working on exit financing | Southern District of Florida |
| 3-11-04506 | Austosh Group, Inc | Paul M Glenn | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | Yes | Yes | Settled at mediation | Middle District of Florida |
| 3-11-04507 | Peachtree Inn, LP | Paul M Glenn | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | Yes | Yes | Settled at mediation | Middle District of Florida |
| 12-02216 | Laxmi Enterprises, Inc | William S Shulman | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | No | No | Settled informally | Southern District of Alabama |
| 14-10427 | Prince Preferred Hotels Shreveport 2, LLC | Jeffery P Norman | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | No | No | Settled informally | Western District of Louisiana Shreveport Division |
| 3:11-04071 | Welcome Hospitality, LLC | Jerry A. Funk | Feasibility, Interest rate, Management turn around, Broker Opinion of Value | No | Yes | Settled informally | Middle District of Florida |
| 19:11365-TMD | Blue Chip Hotels Asset Group- Round Rock, LLC | Tony Davis | Feasibility, Broker Opinion of Value | No | No | Settled informally | Western District of Texas-Austin |

| | | | | | | | Division |
|---|---|---|---|---|---|---|---|
| 19-54790-WLH | Janam Madison Lodging, LLC | Wendy L. Hagenau | Feasibility | No | Yes | Contested Conformation, Case was confirmed | Northern District of Georgia, Atlanta Division |
| 19-54798-WLH | Sanam Conyers Lodging, LLC | Wendy L. Hagenau | Feasibility | No | Yes | Contested Conformation, Case was confirmed | Northern District of Georgia, Atlanta Division |

Note: All the above files NHCG worked closely with Debtor's counsel to provide feasibility advice and helped structure all the settlement structure and framework on behalf of Debtor.

13421 Parker Commons Blvd, Suite 102, Fort Myers, Fl 33912    Telephone 888-879-9056    Fax 888-376-3210



**Trusted experts, dedicated to guiding efforts of lenders, owners, operators, and investors.**

# COMPANY

## Mission Statement

Our mission is to support our customer's ability to manage the continuing cycle of change in information, data, and risk associated with their businesses. We act as a trusted advisor for our client's most critical issues and opportunities.

## Approach

We approach each of clients obstacles with eagerness and perseverance. We work closely together to understand concerns and issues, all the while building long term relationships through our commitment to service.

- Execution: fulfillment of services is our number one priority through this promise we build trust amongst our team and clients
- Attention to detail: this quality reflects on our promise to our clients and commitment to our service
- Expertise: our experience, resourcefulness and ability to ask essential questions allow us to deliver superior insight and solutions







**NHCG**
CONSULTING AND DEVELOPMENT

13461 Parker Commons Blvd., Suite 201, Fort Myers, FL 33912 | (888) 879-9056 | info@nhcgfm.com

www.nhcgfm.com



# NHCG
CONSULTING AND DEVELOPMENT



## INTRODUCTION TO SERVICES

Precise data and analysis in combination with functional expertise bringing superior services to our clients.

# SERVICES

### Valuation & Advisory Services

Utilizing a comprehensive valuation and conclusive commercial valuation, appraisal and advisory services. In addition to the services listed below, our valuation disciple ties in all facets of the commercial asset, allowing us to provide price and financing guidance for buyers and evaluation for vested owners.

- Commercial Land and Asset Appraisal
- Pro Forma & Growth Projections
- Breakeven NOI Estimation
- Income & Expense Structure Analysis
- Risk Management Analysis
- Operational Benchmarking
- Brand/Franchise Value Attribution





Case 3:24-bk-02448    Doc 18    Filed 07/05/24    Entered 07/05/24 13:04:13    Desc Main
Document      Page 41 of 55

## Investment Analysis & Portfolio Management

With affiliations to commercial real estate ownership and management, we can offer a hands-on approach to investment optimization and portfolio management. By implementing our proven systems and procedures, we can assist ownership teams to increase their ROI and reach their financial goals.

- Rate Fluctuation Analysis
- Rate Obscuring Techniques
- Booking Pattern Analysis
- Customer Rate Resistance
- Exit Price Wars
- Establish Rate Integrity
- Portfolio Management & Advisory
- Property Acquisition





**NHCG**
CONSULTING AND DEVELOPMENT

13461 Parker Commons Blvd., Suite 201, Fort Myers, FL 33912  |  (888) 879-9056  |  info@nhcgfm.com

www.nhcgfm.com

# SERVICES (continued)

**Feasibility & Market Analysis**

Using essential data, information, statistics and a credible framework for investigation, we provide objective reporting and honest reporting to determine the practicality of an investment and its likelihood of success.

- Feasibility Study

    Occupancy, Average Daily Rate, and RevPar Analysis

    Demand Segmentation

    Identification of new Market Segments and Distribution Channels

For owners; we assist in uncovering the strengths and weaknesses of existing businesses or potential ventures. Through a better analysis and understanding of markets, we help optimize businesses to take advantage of shifts in their respective markets.





## Project Development

From ground up construction to reconception or renovation, we offer a thorough blend of development services that can be catered to enhance the value of your development project.

- Project Management
- Turn-key Hotel Development
- Construction and Development Estimations
- Design Management
- Ordering and/or Negotiating Furniture, Fixtures Equipment (FF&E)
- Coordination of Licenses, Permits, and Code Compliance
- Hotel Construction Services
- Hotel Conversion/Renovation





**NHCG**
CONSULTING AND DEVELOPMENT

Case 3:24-bk-02448    Doc 18    Filed 07/05/24    Entered 07/05/24 13:04:13    Desc Main
Document        Page 44 of 55

**Testimonial & Ligation Support**

With an experienced team of commercial real estate and consulting professionals, we can stand to provide independent consultation and support for arbitration and litigation matters. With a proven success record in various facets of the hospitality industry, we are able to identify the issues of your case, define a scope of work, and source legal counsel.

- Bankruptcy
- Partnership Disputes
- Lender/Owner Disputes
- Quantification of loss of profits and/or value due to:

  Construction defects

  Disruption of operations

  Natural and man-made disasters

  Partial takings





**NHCG**
CONSULTING AND DEVELOPMENT

13461 Parker Commons Blvd., Suite 201, Fort Myers, FL 33912  |  (888) 879-9056  |  info@nhcgfm.com

www.nhcgfm.com

## Management Consulting

Firms that effectively understand, and implement change in their business strategies give themselves a competitive edge within their respective environments. The goal of a business is to maximize share holder value, our experience and proven frame work can assist with the crucial decision making that enables owners, developers, and investors to do this.

- Determine and examine key elements of your business
- Define expectations and goals to execute on strategy
- Develop practical solutions and implementation processes
- Implement changes in process and systems
- Monitor efficiency and ongoing operations





**NHCG**
CONSULTING AND DEVELOPMENT

13461 Parker Commons Blvd., Suite 201, Fort Myers, FL 33912 | (888) 879-9056 | info@nhcgfm.com

www.nhcgfm.com

## IT Consulting

In an ever-changing business environment, IT utilization has proven itself to be a critical and most often underutilized component of today's business operations. The training, implication, and adaptive use of new technology is critical in maintaining a competitive business advantage. We provide a depth analysis of infrastructure and outline areas of strength and weakness for your firm's IT operating system and security systems.

### IT Strategic Planning

- Analyze technology concerns and issues to provide viable solutions
- Work with your management team to achieve corporate objectives and execute strategy

### Work Flow Analysis

- Review operational procedures, staffing, training, etc. and recommend improvements
- Evaluate company systems; assist in RFP process and in vendor selection

### Technology Management

- Assess existing system and review effectiveness
- Identify functional gaps and bottlenecks
- Develop or modify processes, procedures or systems where applicable





13461 Parker Commons Blvd., Suite 201, Fort Myers, FL 33912 | (888) 879-9006 | info@nhcgfm.com

www.nhcgfm.com

**Miscellaneous Services**

Our multidisciplinary team of experienced professional are able to cater our work to fit your needs. In addition to our listed services, we can also assist with:

- Capital Raise
- Corporate Restructuring
- Debt Financing
- Residential Real Estate





**NHCG**
CONSULTING AND DEVELOPMENT



# NHCG
CONSULTING AND DEVELOPMENT

## TEAM

We know it through experience; from hotels, senior living facilities, multifamily housing, resorts, casinos and residential we offer our diverse experience in real estate. Our professionals give their clients a promise of service that defines our company and commitment to our clients.



**Mike Patel**
*Director of Operations*
O : (888) 879-9056 EXT. 101
C: (727) 647-8627
mikepatel@nhcgfm.com

**Jonathan Chang**
*Senior Design Consultant*
O : (888) 879-9056 EXT. 104
C: (646) 712-1117
jonathanchang@nhcgfm.com

**Rick Patel**
*Senior Financial Consultant*
O: (888) 879-9056 EXT. 102
C: (239) 229-0560
rickpatel@nhcgfm.com

**Bhavik Patel**
*Senior Consultant*
O: (888) 879-9056 EXT. 105
C: (941) 258-2606
bhavikpatel@nhcgfm.com

**Dipesh Patel**
*Senior Consultant*
O: (888) 879-9056 EXT. 103
C: (239) 244-1237
dipeshpatel@nhcgfm.com

**William Hamilton**
*Senior Associate*
O: (239) 227-2195
C: (954) 254-6655
whamilton@nhcgfm.com

www.nhcgfm.com

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Judge Charles M. Walker |
| **AMARILLO PLATINUM, LLC;** | ) | |
| **MIDLAND PLATINUM, LLC;** | ) | Case No. 3:24-bk-02447 |
| **MIDLAND PLATINUM II, LLC** | ) | Case No. 3:24-bk-02448 |
| | ) | Case No. 3:24-bk-02449 |
| Debtors. | ) | |
| | ) | JOINT ADMIN REQUESTED |

## VERIFIED STATEMENT OF MANOJ ("MIKE") PATEL

I, Manoj ("Mike") Patel, verify and declare under penalty of perjury that the following statements are true to the best of my knowledge, information and belief:

1.      All facts set forth in this statement are based upon my personal knowledge.

2.      I am the Owner and the Director of Operations of National Hospitality Consulting Group ("NHCG"). I have owned NHCG since 2006.

3.      I am duly authorized to execute this verified statement on behalf of NHCG. I submit this verified statement on behalf of NHCG in support of the application of the above-captioned debtors (the "Debtors") to employ NHCG as their restructuring and general business advisors.

4.      NHCG is a full-service consulting company dedicated to the hospitality industry. It advises clients with regard to financial restructuring, turnaround and general business matters affecting the clients' profitability.

5.      NHCG's professionals and I have many years' worth of experience advising clients regarding financial restructuring, turnaround and general business matters affecting the clients' profitability. A copy of my curriculum vitae setting forth my experience, employment history, achievements in the hotel and hospitality space, academic and professional credentials, certifications, and extensive expert testimony experience in bankruptcy courts across the country

is attached to the application for NHCG's retention (the "Retention Application"). Said Retention Application also includes certain NHCG marketing material setting forth the scope of work that NHCG provides. NHCG and I also have specific experience serving in the role described in the Retention Application with the Affiliate Debtors.[1]

6.      NHCG has agreed to provide such services to the Debtors as may be necessary in this case, including but not limited to the services set forth in the Retention Application.

7.      NHCG has not received any compensation from the Debtors as of the Petition Date.

8.      NHCG is disinterested as that term is defined in the Bankruptcy Code. NHCG does not hold or represent any interest adverse to the Debtors' estates in the matters for which it is proposed to be employed and will not represent or advise any creditor of the Debtors or any other party in these cases in any matter that is related to this Chapter 11 case. As set forth above, NHCG serves in an identical capacity for which it seeks retention here in the Affiliate Cases. I am aware, and I hereby affirmatively acknowledge, that, historically, the funds of each Debtor and Affiliate Debtor have been held in a centralized sweep account maintained by Platinum Management Services, LLC ("PMS")—another affiliate of the Debtors and the Affiliate Debtors.[2] As set forth in the *Consolidated Company Profile* filed in the Affiliate Cases, this process occurred in the ordinary course of business and allowed the affiliate hotels to provide internal short term support to one another during offseason periods. As a result, certain of the Debtors may indirectly have net receivables due from—or payables due to—certain other Debtors or Affiliate Debtors by and through PMS via the prepetition sweep accounts. Subject to the foregoing, I am not aware of any

---

[1] Any capitalized terms not specifically defined herein shall have the meaning ascribed to them in the Retention Application.

[2] Neither the Debtors nor the Affiliate Debtors utilize centralized sweep accounts maintained by PMS as of the Petition Date.

cause of action or other claim between the Debtors or any Affiliate Debtor that would prevent NHCG from remaining disinterested in its role as restructuring advisory firm—or my role as chief restructuring officer—for the Debtors or the Affiliate Debtors.

9.      To the best of my knowledge, NHCG does not hold or represent any interest adverse to the Debtors' estate in the matters for which it is proposed to be employed and will not represent or advise any creditor of the Debtors or any other party in these cases in any matter that is related to these Chapter 11 cases.

10.     All services provided by NHCG have been or will be performed properly, efficiently and to a high standard of quality, and NHCG will continue to perform high quality work for the Debtors.  Based on the information available to it as of the date of execution of this verified statement, NHCG believes that it does not hold any interest adverse to the Debtors' estates that would preclude representation of the Debtors in this case.  NHCG believes its retention is in the best interests of the Debtors and their creditors.

11.     Except for the Agreement, no promise has been received by NHCG or any member thereof as to compensation in connection with the Debtors.

12.     NHCG has no agreement with any other person or entity to share with it any compensation received by NHCG in connection with the Debtors.

13.     NHCG intends to file periodic fee applications itemizing and describing its time spent in its provision of services for the Debtors at the rates set forth in the Retention Applications. NHCG shall not accept any payment from the Debtors for services rendered absent an order from the Bankruptcy Court approving such payment.

DATED:  July 5, 2024

/s/ Manoj ("Mike") Patel
Manoj ("Mike") Patel, Owner and Director of Operations
National Hospitality Consulting Group

3

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) Judge Charles M. Walker |
| **AMARILLO PLATINUM, LLC;** | ) |
| **MIDLAND PLATINUM, LLC;** | ) Case No. 3:24-bk-02447 |
| **MIDLAND PLATINUM II, LLC;** | ) Case No. 3:24-bk-02448 |
| | ) Case No. 3:24-bk-02449 |
| Debtors. | ) |
| | ) JOINT ADMIN REQUESTED |

**ORDER APPROVING EMPLOYMENT AND RETENTION OF NATIONAL
HOSPIALITY CONSULTING GROUP AS RESTRUCTURING AND
GENERAL BUSINESS ADVISORS FOR THE DEBTORS**

This matter came for consideration on the *Application for Order Approving Employment and Retention of National Hospitality Consulting Group as Restructuring and General Business Advisors for the Debtors* (the "Motion").[1]  It appears that approval of employment on the terms and conditions described in the Motion is appropriate, and that pursuant to Section 327(a) of the Bankruptcy Code, the Debtors are authorized to employ National Hospitality Consulting Group ("NHCG") as restructuring and general business advisors for the Debtors, with its Director of Operations, Manoj ("Mike") Patel, to serve as the Debtors' chief restructuring officer.  It further appears that notice of the Motion was properly given pursuant to all applicable bankruptcy rules and that no objections were filed.

IT IS THEREFORE ORDERED that the Motion is approved on the terms and conditions described in the Motion, and NHCG is approved and authorized as restructuring and general business advisors for the Debtors pursuant to the terms set forth in the Agreement.

---

[1] Any capitalized term not specifically defined herein shall have the meaning ascribed to it in the Motion.

IT IS FURTHER ORDERED that NHCG may file a first interim fee application on or after the 30th day following commencement of this case consistent with the Motion. Unless otherwise ordered by the Court, all subsequent fee applications shall be filed no more often than once every 30 days. No funds may be paid by the Debtors post-petition to NHCG for fees or expenses absent entry of an order approving the fees and expenses. NHCG shall otherwise comply with and be compensated in accordance with Sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, and all applicable Local Rules.

IT IS FURTHER ORDERED that, prior to any increases in NHCG's rates billed to the Debtors, NHCG shall file a supplemental affidavit with the Court the basis for the requested rate increase in accordance with Section 330(a)(3)(F) of the Bankruptcy Code and whether the Debtors have consented to the increase. Prior to the rate increase taking effect, NHCG shall provide ten business days' notice to the Debtors, the U.S. Trustee, and any official committee. Further, the U.S. Trustee retains all rights to object to any rate increase on all grounds, including, but not limited to, the reasonableness standard provided for in Section 330 of the Bankruptcy Code.

IT IS SO ORDERED.

THIS ORDER WAS SIGNED AND ENTERED
ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE

APPROVED FOR ENTRY:

/s/ Henry E. ("Ned") Hildebrand, IV
Henry E. ("Ned") Hildebrand, IV
Gray Waldron
DUNHAM HILDEBRAND PAYNE WALDRON, PLLC
9020 Overlook Boulevard, Suite 316
Brentwood, Tennessee 37027
615.933.5851
ned@dhnashville.com
gray@dhnashville.com
*Counsel for the Debtors*

3